**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10

CENTER FOR BIOLOGICAL DIVERSITY, and FRIENDS
OF THE EARTH,
11                                                        No. C 05-01526 WHA

12              Plaintiffs,

13        v.
                                                          **ORDER ON**
14   U.S. DEPARTMENT OF ENERGY, U.S.  DEPARTMENT          **CROSS-MOTIONS**
     OF AGRICULTURE, U.S. DEPARTMENT OF                   **FOR PARTIAL**
15   COMMERCE, U.S. DEPARTMENT OF DEFENSE, U.S.           **SUMMARY**
     DEPARTMENT OF HEALTH AND HUMAN SERVICES,             **JUDGMENT**
16   U.S. DEPARTMENT OF HOUSING AND URBAN
     DEVELOPMENT, U.S. DEPARTMENT OF THE
17   INTERIOR, U.S. DEPARTMENT OF LABOR, U.S.
     DEPARTMENT OF TRANSPORTATION, U.S.
18   DEPARTMENT OF VETERANS AFFAIRS, CENTRAL
     INTELLIGENCE AGENCY, DEPARTMENT OF
19   HOMELAND SECURITY, EXECUTIVE OFFICE OF
     THE PRESIDENT, FEDERAL COMMUNICATIONS
20   COMMISSION, and GENERAL SERVICES
     ADMINISTRATION,
21
                Defendants.
22   _____/

23                          **INTRODUCTION**

24        In a sequel to an earlier action and order requiring overdue agency action,

25   two environmental organizations again seek enforcement of the Energy Policy Act of 1992.

26   The core question concerns the extent to which the Secretary of Energy is obligated to require

27   large private and municipal fleets of motor vehicles to use alternative-fuel vehicles (AFVs).

28   At issue now are cross-motions for summary judgment.

**United States District Court**
For the Northern District of California

**STATEMENT**

The Energy Policy Act of 1992, Pub. L. 102-486, 102 Stat. 2776, signed into law by President George H. W. Bush on October 24, 1992, enacted a comprehensive set of programs for reducing petroleum consumption and dependence on foreign oil, almost all of which were placed under the stewardship of the Secretary of Energy.  One of its programs called for development and use of "replacement fuels."  This term meant "the portion of any motor fuel that is methanol, ethanol or other alcohols, natural gas, liquified petroleum gas, hydrogen, coal derived liquid fuels" and other combustibles determined by the Secretary to be "substantially not petroleum and would yield substantial energy security benefits and substantial environmental benefits."  42 U.S.C. 13211(14).  (For convenience and uniformity, all citations and references shall be to the Act as codified.)

On or before October 1, 1993, the Secretary was required, under 42 U.S.C. 13252, to establish a program to promote the development and use of domestic replacement fuels in light-duty motor vehicles.  Under this program and by this deadline, the Secretary was required to consult with other agencies and to determine the technical and economic feasibility of achieving the goals of producing sufficient replacement fuels to replace:

- at least ten percent by the year 2000, and
- at least thirty percent by the year 2010

    of the projected consumption of motor fuel in the

    United States for each such year, with at least half of

    such replacement fuels being domestic fuels.

The latter will be referred to herein as the "Thirty Percent By 2010" goal.  The Secretary was required to publish in the Federal Register the results of the 1993 and followup determinations and provide for an opportunity for public comment.  42 U.S.C. 13252.  No such publication in the Federal Register ever occurred, at least prior to 1998.

Of particular relevance herein, the Secretary was further required — before October 24, 1995 — "and periodically thereafter" — to examine these goals to determine if they should be

**United States District Court**
For the Northern District of California

1    modified, publishing in the Federal Register the result of each examination and providing an

2    opportunity for public comment.  42 U.S.C. 13254(a).  The Act stated:

3              If, after analysis of information obtained in connection with
              carrying out subsection (a) of this section or section 13252 of this

4              title, or other information, and taking into account the
              determination of technical and economic feasibility made under

5              section 13252(b)(2) of this title, the Secretary determines that
              goals described in section 13252(b)(2) of this title, including the

6              percentage requirements or dates, are not achievable, *the
              Secretary, in consultation with appropriate Federal agencies,*

7              *shall, by rule, establish goals that are achievable, for purposes of*
              *this subchapter*.  The modification of goals under this section may

8              include changing the target dates specified in section 13252(b)(2)
              of this title.

9    42 U.S.C. 13254(b) (emphasis added).

10          Significantly, no such modification has ever occurred.  This has been true despite

11   acknowledgment by the agency since as early as 1998 that the goals were unachievable, as will

12   be set forth below.

13          A different provision of the Act also called for modification of these goals.  This was in

14   the context of evaluating whether to require a private/municipal fleet AFV rule.  While the Act

15   specified AFV requirements for fleets operated by the federal government, state governments

16   and certain so-called alternative fuel producers, another provision, concerned large private and

17   municipal fleets, the focus of this lawsuit.  As to them, the Secretary was obligated to decide

18   whether to set fleet requirements in two stages.  The first was so-called "early rulemaking."

19   That deadline came and went with no action and really has no continuing relevance here.

20          The second was due April 1, 1998.  By then, the Secretary was required to publish an

21   advance notice of proposed rulemaking for the purpose of:

22             (1)  evaluating the progress toward achieving the goals of

23             replacement fuel use described in section 13252(b)(2) of this title,
              as modified under section 13254 of this title;

24             (2)  identifying the problems associated with achieving those

25             goals;

26             (3)  assessing the adequacy and practicability of those goals; and

27             (4)  considering all actions needed to achieve these goals.

28   42 U.S.C. 13257(c).

**United States District Court**

For the Northern District of California

1   This advance notice was given in 1998 and three public hearings were held. *See* 63 Fed.

2   Reg. 19372 (Apr. 17, 1998).

3   By January 1, 2000, the Secretary was required to publish a final rule to "determine

4   whether a fleet requirement program was necessary."  The Act set forth a definition of

5   "necessary":

6   > Such a program shall be considered necessary and a rule therefor
    > shall be promulgated if the Secretary finds that —

7

8   > (A)  the goal of replacement fuel use described in section
    > 13252(b)(2)(B) of this title [*i.e.*, the Thirty Percent By 2010 goal],
    > as modified under section 13254 of this title [never modified], is

9   > not expected to be actually achieved by 2010, or such other date
    > as is established under section 13254 of this title, by voluntary

10  > means or pursuant to this subchapter or any other law without
    > such a fleet requirement program, taking into consideration the

11  > status of the achievement of the interim goal described in
    > section 13252(b)(2)(A) of this title, as modified under section

12  > 13254 of this title; and

13  > (B)  such goal is practicable and actually achievable
    > within periods specified in section 13252(b)(2) of this title, as

14  > modified under section 13254 of this title, through
    > implementation of such a fleet requirement program in

15  > combination with voluntary means and the application of other
    > programs relevant to achieving such goals.

16  42 U.S.C. 13257(e)(1).

17  Under Section 13257(g), if the Secretary determined that a fleet requirement was

18  "necessary" within the above definition, then the Secretary was obligated to require by rule

19  that certain specified percentages of vehicles acquired in the affected fleets be AFVs.  This was

20  to be done by January 1, 2000, a deadline extendable only by ninety days upon notice in the

21  Federal Register.  42 U.S.C. 1257(h).  This AFV requirement is at the core of this action.

22  Regarding the "necessity" evaluation, the Act recognized that the Thirty Percent By 2010

23  goal might be deemed impracticable and, in that event, called for substitution of a revised goal in

24  making the "necessity" determination.  Specifically, if the goal was deemed by the Secretary to

25  be "inadequate or impracticable and not expected to be achievable," then the Secretary was

26

27

28

4

**United States District Court**
For the Northern District of California

1 required to establish a revised goal and the revised goal was to be used in making the findings in

2 Section 13257(e)(1).  This provision warrants full quotation:

3           (2)  The rule under subsection (b) or (g) of this section shall also
              modify the goal described in section 13252(b)(2)(B) of this title
4           [Thirty Percent by 2010] and establish a revised goal pursuant to
              section 13254 of this title if the Secretary determines, based on
5           the proceeding required under subsection (a) or (c) of this section,
              that the goal in effect at the time of that proceeding is inadequate
6           or impracticable, and not expected to be achievable.  *Such goal as
              modified and established shall be applicable in making the*
7           *findings described in paragraph (1).*  If the Secretary modifies the
              goal under this paragraph, he may also modify the percentages
8           stated in subsection (a)(1) or (g)(1) of this section and the
              minimum percentage stated in subsection (a)(2) or (g)(2) of this
9           section shall be not less than 10 percent.

10 42 U.S.C. 13257(e)(2) (emphasis added).

11          Thus, in two separate contexts, two separate provisions called for modification of the

12 Thirty Percent By 2010 goal if it proved impracticable:  the fleet-rule provision just quoted

13 (Section 13257) and the provision for periodic review and modification quoted earlier

14 (Section 13254).

15          The statutory deadlines came and went.  There were no publications and actions by the

16 Secretary.  This led to the lawsuit and the eventual order reported at *Center for Biological*

17 *Diversity v. Spencer Abraham*, 218 F. Supp. 2d 1143 (N.D. Cal. 2002) (EPAct I).  That decision

18 ordered the Secretary to make a decision whether to implement a municipal/private fleet rule.

19 The Secretary requested comments and held hearings to determine the desirability of such a rule,

20 *i.e.*, to make the necessity determination.  The Secretary then issued a notice of proposed

21 rulemaking, indicating his intention not to implement a fleet requirement.  68 Fed. Reg. 10320

22 (Mar. 4, 2003).  After further public comment, the Secretary issued a final decision, concluding

23 that a non-federal fleet rule was not "necessary."  69 Fed. Reg. 4219 (Jan. 29, 2004).

24          The essence of the decision was that an AFV requirement for municipalities and private

25 fleets would make little difference in achieving the Thirty Percent By 2010 goal or, for that

26 matter, *any* revised goal.  The impact would be about 0.2 percent:

27           For purposes of the goals contained in EPAct, DOE believes that
              fuel replacement should be considered in the context of all
28           on-highway motor fuel use, including heavy-duty vehicle fuel
              use, because the goals contained in section 502 of EPAct are to be

5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**

For the Northern District of California

> considered in the context of the "projected consumption of motor fuel in the United States." (42 U.S.C. 13252(b)(2).)  This section does not refer only to light-duty fuel use.  The figures provided in these earlier reports, when adjusted to reflect the impact on all on-highway motor fuel use, show that a private and local government fleet rule — even with a fuel use requirement, have the authority to impose — would provide at most on the order of 0.7–0.8 percent motor fuel replacement.  After taking into account the fact that DOE has no authority to mandate fuel use, DOE estimates that a private and local government fleet AFV acquisition mandate would likely provide only about 0.2 percent motor fuel replacement.

69 Fed. Reg. 4226 (3d col.) (Jan. 29, 2004).

Furthermore, the Secretary stated that he had decided against modifying the

Thirty Percent By 2010 goal:

> DOE has decided not to propose or finalize any revisions to the replacement fuel goal because, first, DOE does not believe that EPAct requires it to revise the petroleum replacement fuel goal in order to determine whether a private and local government fleet rule is "necessary."  Revising the goal as part of this rulemaking would serve no purpose because, as indicated in the NOPR and in this final rule, the adoption of a revised goal would not impact DOE's determination that a private and local government fleet rule provides no appreciable increase in replacement fuel use.  In addition, the limited regulatory authority under Title V of EPAct and existing market factors independently warrant a finding that an AFV acquisition mandate under section 507(e) is not "necessary."  Therefore, DOE is not required under section 507(e) to revise the EPAct 2010 percent replacement fuel goal, since it would not influence DOE's decision regarding whether or not to implement a private and local government fleet regulation.

69 Fed. Reg. 4229 (1st col.).

The agency also argued that the statutory goals were merely "aggressive aspirational

petroleum reduction targets."  69 Fed. Reg. 4229 (1st col.).  The agency stated that "very little

progress has been made toward achieving the goals." *Ibid*.  The agency alluded to pending

executive and congressional initiatives and suggested that events and efforts subsequent to

1992 had, in effect, rendered the AFV provisions a stranded relic.

In this action, plaintiffs seek to set aside the agency action, to require the Secretary to

modify the Thirty Percent By 2010 goal, and then to re-determine the AFV fleet rule in light of

the modified goal.

**United States District Court**
For the Northern District of California

**ANALYSIS**

More than six years has passed since the statutory deadline for the "necessity" determination and final fleet rule under Section 13257(e). In *EPAct I*, the Secretary was ordered to make the determination and either impose an AFV rule or not but at least to make the decision. After a rulemaking process, the Secretary then concluded that a municipal/private fleet rule was not necessary. He rejected a fleet rule. That would ordinarily have been the end of it. Under the rules of judicial review, agency action is presumed valid, deference is due, and a judge cannot simply substitute his or her judgment for that of the agency charged by Congress with making the decision. *See, e.g.*, *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 94–5 (1995).

The problem here, however, is that the Secretary violated a command of the Act. A two-step process was required by the Act. The Secretary was supposed (i) to revise the Thirty Percent By 2010 goal as needed to make it realistic and (ii) only thereafter — with the benefit of the revised goal — to determine if a fleet rule was necessary to meet the goal. The Secretary refused to revise the goal. He refused to revise it, even while acknowledging that the goal was unachievable. This was fatal error. The agency simply refused to follow the statutory procedure required for making the determination.

Again, Section 13257(e)(2) stated:

> The rule . . . shall also modify the goal if the Secretary determines, based on the proceeding required under subsection (a) or (c), that the goal . . . is inadequate or impractical, and not expected to be achievable. Such goal as modified and established shall be applicable in making the findings [re necessity].

The Secretary has long been of the view that the goal is impractical and not expected to be achieved. By the time Congress amended the Act in 1998, for example, the Secretary had concluded:

> *It is clear DOE will not achieve the replacement fuel goals established in section 502*. DOE estimates actual use of replacement fuel in 1996 was only 3.1 percent of total highway motor fuel—2.9 percent was oxygenates blended into gasoline and 0.2 percent was alternative fuel use. This compares to the targets of 10 percent in 2000 and 30 percent in 2010. DOE estimates alternative fueled vehicle sales would have to grow to between 35 and 40 percent of total light duty vehicle sales by 1999 and stay

7

**United States District Court**

For the Northern District of California

1

2

3

4

5

> at that level to meet the 2000 goal.  The Department concedes that this is extremely unlikely to occur.  DOE estimates Federal, State, and local alternative fueled vehicle programs could displace about 3 percent of light duty vehicle motor fuel use in 2010, and replacement fuels in the form of oxygenates could account for an additional 4.8 to 6.7 percent of fuel use.  It appears replacement fuel use in 2010 will account for 10 percent or less of motor fuel use — far short of 30 percent.

6

H. R. Rep. 105-727, at 9 (emphasis added).  As early as 1998, therefore, the Secretary was aware

7

that the replacement-fuel goals could not be met on the timeline in Section 13252.

8

The acknowledgment of unachievability continued.  When the Secretary proposed a

9

fleet-rule order in 2003 (in response to *EPAct I*), the Secretary stated:

10

11

12

13

14

> The result is that although the use of replacement and alternative fuels has increased since 1992, the overall use of these fuels relative to total petroleum consumption remains relatively small.  In 1992, replacement fuels accounted for slightly less than 2 percent of total motor fuel consumption; by 2001, replacement fuels accounted for less than 3 percent. *See Transportation Fuels 2000* at Table 10.  Thus, to date, very little progress has been made toward achieving the aggressive goals established by EPAct and little progress will be made in the future without major new initiatives.

15

68 Fed. Reg. 10342 (2d col.) (Mar. 4, 2003).

16

There is no doubt that the original goal has long been deemed unrealistic by the agency

17

and that, contrary to the Act, no modification of it has ever occurred.

18

In a gesture toward the goal-modification requirements, the Secretary included a

19

discussion on the topic in the agency decision at issue.  That discussion again acknowledged the

20

hopelessness of meeting the Thirty Percent By 2010 goal and again refused to revise it.  The Act

21

instructed the Secretary to adopt a realistic goal before making the "necessity" determination.

22

This studied refusal to modify the goal violated Section 13257(e)(2).

23

What is more, apart from Section 13257 and its fleet-rule process, Section 13254

24

independently required modification of the goal.  Such modifications were supposed to flow, as

25

needed to remain realistic, from the ongoing periodic reviews required by Section 13254.

26

Again, Section 13254 required the Secretary to examine the goals for achievability starting

27

28

8

United States District Court

For the Northern District of California

1    October 24, 1995, and periodically thereafter; if the goal was not achievable, then a modified,

2    achievable goal was supposed to have been substituted:

3                        If after analysis of information obtained in connection with [the
                         periodic reviews] or other information . . . , the Secretary
4                        determines that the goals . . . , including the percentage
                         requirements or dates, are not achievable, the Secretary . . . shall,
5                        by rule, establish goals that are achievable . . . .

6    42 U.S.C. 13254(b).

7          Thus, the Act imposed a duty to modify the goals in two separate ways:  via

8    Section 13254 and via Section 13257, the former being a part of the periodic review process and

9    the latter being part of the municipal/private fleet process.  Both were violated in this case.

10   Even today, fourteen years after the first President Bush signed the Act into law, no modification

11   of the goal has ever been made.

12                                      *          *          *

13         To this, the Secretary makes the following arguments.  *First*, the Secretary argues that the

14   benefits of an AFV rule would only be a 0.2 percent reduction and that this would be too small to

15   make any difference in achieving any goal.  This order disagrees.

16         As quoted above, Congress required that a fleet rule would be deemed necessary if

17   (i) the Thirty Percent By 2010 goal, as modified to be realistic, is not expected to be achieved by

18   2010 or such other modified date without such a fleet requirement and (ii) such goal would be

19   achievable through a fleet requirement program in combination with voluntary and other AFV

20   programs.  42 U.S.C. 13257.  *These twin elements hinge on the goal as modified to be realistic*.

21   The Secretary could only carry out the statutory test by first modifying the goal so as to be

22   realistic.  For example, if the revised goal were reduced from thirty percent to five percent,

23   even a 0.2 percent contribution would go a tenth of the way in closing the gap between where we

24   are now (three percent) and the revised goal (five percent).  That in combination with the other

25   AFV programs mentioned might well be enough to trigger a necessity finding.  If the revised

26   goal were four percent, then the 0.2 percent contribution would close twenty percent of the gap.

27   This would not be meaningless.

28

9

**United States District Court**
For the Northern District of California

1     *Second*, the Secretary contends that the goals were only "aspirational."  No authority is

2  cited for this remarkable proposition.  Significantly, the goals were to be the keystone of the

3  entire analysis delegated to the Secretary.  To make the analysis sound, Congress insisted that

4  they be revised to make them realistic.  The goals were not merely "aspirational."

5     *Third*, defendants note that Congress had several opportunities to amend the goals on its

6  own and has let them pass.  If Congress favored inaction, so too could the agency, it is argued.

7  The difference is that Congress enacted a law requiring the agency to act.  The agency failed to

8  do so.  It violated the law.  Congress was not required to pass yet another law to compensate for

9  the agency's neglect.

10     *Fourth*, defendants argue that the Act provided no guidance as to how to modify the

11  Thirty Percent By 2010 goal.  This order disagrees.  Both Sections 13254 and 13257 give the

12  straightforward mandate that the Secretary implement a goal that is *achievable*.  It has become

13  clear that thirty percent is not achievable.  The Secretary is required to determine the percentage

14  that is.

15     *Finally*, the Secretary contends that plaintiffs lack standing.  This was rejected in

16  *EPAct I*.  This challenge is over the same statutory duty, the duty to make a necessity

17  determination for a possible private/municipal fleet AFV rule.  The same ruling must be made

18  here.  The reasons will not be repeated.  *See* 218 F. Supp. 2d at 1154–57.

19                              *          *          *

20     This order agrees with the Secretary that NEPA, 42 U.S.C. 4332, does not apply to the

21  agency action at issue, although for a different reason than advanced by the Secretary.

22     NEPA requires federal agencies to prepare a detailed environmental impact statement for

23  "every recommendation or report on proposals for legislation and other major Federal actions

24  significantly affecting the quality of the human environment."  42 U.S.C. 4332(2)(c).

25  Nevertheless, "[a]n EIS is normally not required where agency action is mandatory."

26  *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343 (9th Cir. 1995) (citation omitted).

27     Here, the contested provisions of the Energy Policy Act imposed mandatory action on

28  the Secretary.  As explained above, the Secretary had no discretion whether to modify the

**United States District Court**

For the Northern District of California

1  Thirty Percent By 2010 goal under either Sections 13254 or 13257 of the Act once the goal was

2  deemed unacheivable.  Likewise, Section 13257(e)(1) dictated that the private/municipal fleet

3  rule "shall be considered necessary and a rule therefor shall be promulgated."

4       Moreover, the policies of NEPA were already promoted by the Act.  One of the factors

5  for determining the necessity of the private/municipal fleet rule was the "effect on greenhouse

6  gases."  42 U.S.C. 13257(l).  Furthermore, Section 13257 required the opportunity for public

7  comment in conjunction with the promulgation of the rule.  The Act thus already ensured that

8  the fleet rule's impact on the public and the environment was considered.  This order holds,

9  therefore, that the Secretary is not obligated to prepare an impact statement under NEPA in

10  either accepting or rejecting a fleet rule.

**CONCLUSION**

12       The agency action reported at Volume 69 of the Federal Register beginning at Page 4219

13  is hereby **VACATED**.  Each side shall submit a memorandum setting forth a realistic set of

14  milestones with dates so that the final judgment can require efficient and just relief.  Please

15  make these submissions under oath by **MARCH 13, 2006**, each side limited to ten pages.

17       **IT IS SO ORDERED.**

19  Dated:  March 6, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11